FILED
JUNE 5, 2020
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

*In Pursuit of Fair Justice*
**Jamal A. Azeez,**
(BS, MT, MD, 2nd Lt US Army, NYPD Aux Officer)
138-19 Lloyd Rd/ Jamaica, NY 11435.
Cell # 516-476-1779

June 1st, 2020

Re: Case Nos. Beckley 87-F-546, WVSCt 19-0259, SDWV 15:15-15225 and many more.

To: Judge Thomas E. Johnston         5:20-cv-00384

# "BLACK/COLORED LIVES MATTER"

<u>REQUESTING PROSECUTION OF POLICE OFFICER CEDRIC ROBERTSON, BRUCE K. LAZENBY, KRISTIN KELLER FOR THEIR CRIMINAL AND **RACIAL MISCONDUCT** THAT RESULTED IN 13 YEARS OF ILLEGAL AND WRONGFUL IMPRISONMENT.</u>

    As you have seen, many Mayors, Governors, and Attorney Generals around the country have been getting involved to help stop **unchanging** racial injustice and inequality by white law enforcement officials responsible for many deaths, illegal arrests, and wrongful[1] convictions. In my case, I come to you demanding your intervention and **cure** to the racial injustice[2] **peacefully.** I have submitted a preponderance of evidence not only supporting that prosecutor Bruce Lazenby and Cedric Robertson acted with criminal and **racial motives** to convict me, but also, strengthening and corroborating **Factual Innocence.**

    Just as a reminder, below are a few evidence of criminal misconduct (especially No.7 in which Lazenby intentionally, deceitfully, conspiratorially, and discriminatorily struck the only black juror from the panel) proving that I was **wrongfully convicted because of my color and race.** These evidences were submitted with many more.

1. *"I don't know anything about Dr. Slack..."* <u>A blatant lie</u>
2. *"The State is not aware of any exculpatory evidence..."* <u>A blatant lie</u>
3. *"I never received a report...there wasn't a report...the chemist (that did the analysis) quit the job..."* <u>A blatant lie</u>

---

[1] See attached A.P. article by the Center for Public Integrity in which my cases were published nationally.
[2] Ahmaud Aubrey, George Floyd didn't have to die. Cedric Robertson MUST be arrested also for false statements sworn in both Warrants for Arrest and Indictments for Sexual Assault and Failure to Appear.

# REGION

Williamson! Daily News
Friday, June 27, 2003
Page 3A

## Dozens falsely imprisoned due to prosecutor misconduct

By -MICHAEL J.. SN1FFEN
Associated Press Writer

WASHINGTON (AP) — State and local prosecutors bent or broke the rules to help put 32 innocent people in prison, some under death sentence, since 1970, according to the first nationwide study of prosecutorial misconduct.

"Prosecutors misbehaved so badly in more than 2,000 cases during that period that appellate judges dismissed criminal charges, reversed convictions or reduced sentences the study also found.

The study "Harmful Error" included 59 West Virginia cases where defendants alleged misconduct by prosecutors. The prosecutor named in six of those cases stood by her work Thursday.

"We don't want to jeopardize these cases," said Kristen Keller, an assistant prosecutor in Raleigh County. "It's the prosecutor that suffers. He or she has to go and do it all over again."

"Harmful Error" found 223 prosecutors around the nation who had been cited by judges for two or more cases of unfair conduct but in the past 33 years, the study found only two prosecutors had been disbarred for mishandling criminal cases. There are about 30,000 local prosecutors in 2,341 jurisdictions.

A product of three year of research by The Center for Public Integrity, a private ethics watchdog group p the study found 28 cases involving 32 defendants in where' judges concluded that misconduct by prosecutors contributed to the convictions of innocent people.

These 32 were later exonerated 12 by use of DNA genetic evidence. Some of these innocent defendants had been convicted of murder, rape, or kidnapping; some had been under death sentence before exoneration spared them.

In another 26 cases, 31 innocent defendants were convicted despite their allegations of misconduct by prosecutors.

But in those cases, all subsequently exonerated appellate judges dismissed the misconduct allegations or ruled prosecutors committed "harmless error." DNA evidence exonerated 24 of those defendants. The report said convictions of an undetermined number of guilty defendants also were undoubtedly overturned because of unfair prosecutor tactics. Some of those defendants could not be retried and were set free, so prosecutor misconduct "has severe consequences, for the entire citizenry," the report said Charles Lewis, executive director of the center, said that by focusing only on cases in which appellate judges found misconduct the study presented "an extremely conservative and undoubtedly understated picture of the problem." The study also excluded federal prosecutors.

Among the West Virginia Cases the report singles out Keller. During a 1999 murder trial, Keller reminded jurors that the defendant had not testified the report said. The .conviction in that case was later reversed for that comment and others.

A 1994 murder conviction was reversed after Keller asked the defendant about her involvement in satanic rituals during the trial.

. Keller said both defendants were convicted at retrials. She said she raised the issue of satanic .rituals because that defendant had testified "she was a good Christian with good character." "I impeached her by that," Keller said.

Keller said another report wrongly names her as the prosecutor in a 1987 rape case where the defendant (Azeez) alleged racial bias during jury selection. Keller said she handled a separate escape (Failure to Appear) charge against that defendant. (That case was subsequently reversed by the Federal District Court)

Astoria, Ore, District Attorney Joshua Marquis, a National. District Attorneys Association board member, said the cited cases emerge "from a universe of million." The results suggested that the problem was "episodic not epidemic" and that the prosecutors "are and should be subject to a high degree of scrutiny by trial .and appellate judges, defendants and defense lawyers, the press and bar associations and ultimately the voters," Marquis added.

Project director Steve Weinberg, a University of Missouri journalism professor on leave, said researchers found and analyzed 11,458 appellate rulings in which prosecutor misconduct was raised as an issue.

In 2,017 cases, appellate judges found misconduct serious enough to order dismissal missal of charges, reversal of convictions or reduction of sentences. In an additional 513 cases, at least one judge filing a separate concurring or dissenting opinion thought the misconduct warranted reversal.

In thousands more cases judge's labeled prosecutorial behavior inappropriate but characterized it as "harmless error" and allowed a conviction to stand or a trial to continue.

"We are really talking about misconduct in the cases that went to trial," Weinberg told" a news conference, noting that nationally, 95 percent of defendants who are charged never go to trial. A majority plead guilty without a trial, some charges are dropped.

"We eliminated more than 90 percent of all the criminal cases in the United States that could harbor misconduct," because there was no way to detect it, Weinberg said. But Washington University law professor Katherine Goldwasser, a former prosecutor, said it was not safe to assume, that "guilty pleas are absent prosecutorial misconduct."